**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NETWORK AFTER WORK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-6085 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ZENVOY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity action, Plaintiff Network After Work, Inc. ("Plaintiff" or "NAW") brings suit against Defendant Zenvoy, LLC ("Defendant" or "Zenvoy") for breach of contract, unjust enrichment and injunctive relief. Currently before the Court is Defendant's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, to transfer venue. See [11]. For the following reasons, the Court denies Defendant's motion. The parties are directed to file a joint status report, including a proposed discovery plan, no later than July 1, 2021.

I.      **Background**

The following facts are drawn from the complaint [2]. Plaintiff is an Illinois corporation owned and operated by James Miller. Its principal place of business and registered agent are located in Chicago. Plaintiff is a "lead generation company," which uses "Linkedin, Meetup and Email to create targeted leads to grow its member clients' business and influence and help sell its member clients' events." *Id.* at 8. Its "member clients" use its services "to make valuable connections with other members of their business community while enjoying exciting venues including clubs, restaurants, hotels, and special event locations." *Id.* Plaintiff "has become a leader in facilitating leads generation and building networking contacts, and it hosts events that attract a

diverse mix of professionals from all industries and career levels for the purpose of making meaningful professional connections." *Id*. Defendant, an Internet-based networking firm that operates the website www.zenvoy.com, is a California limited liability company owned and operated by Leo Gestetner.

In November 2018, Plaintiff and Defendant executed a Hosted Platform License Agreement ("Agreement"). The Agreement contains a California choice of law clause but is silent as to choice of venue or forum. In the Agreement, Defendant committed to providing Plaintiff with various services, including verifying and confirming email address and contact information for Plaintiff's 17 million contacts. Defendant also agreed to onboard Plaintiff's contacts to an Internet-based community that Defendant was to build out and maintain, so that Plaintiff and Defendant "could both monetize the contact list and equally share any proceeds therefrom." [2] at 6.

In November 2019, Plaintiff informed Defendant in writing that Plaintiff was concerned about Defendant's ability to perform as required under the Agreement. On February 7, 2021, Plaintiff informed Defendant in writing that Plaintiff was in the process of launching its own application to provide services similar to the ones that Defendant allegedly failed to provide under the Agreement. Plaintiff also reiterated its concerns about Defendant's ability to perform as required by the Agreement.

On May 11, 2020, Plaintiff exercised its right to terminate the Agreement, effective July 6, 2020, due to Defendant's alleged failure to perform its obligations under the Agreement. On July 6, 2020, Plaintiff notified Defendant in writing that "ownership of the seventeen million contacts remains with Plaintiff and Defendant cannot use or contact any of the seventeen million contacts."

2

[2] at 10. Nonetheless, Plaintiff alleges on information and belief, Defendant has continued "to use, or contact, or both some or all of the seventeen million contacts." *Id.*

In Count I of the Complaint, for breach of contract, Plaintiff allege that Defendant failed to perform its obligations under the Agreement to "clean" its list of email contacts; "engage and upload" Plaintiff's "preferred vendors and sponsors"; and split with Plaintiff any revenue generated by the Agreement. [2] at 11. In Count II, for unjust enrichment, Plaintiff alleges in the alternative that Defendant has unjustly retained a benefit to Plaintiff's detriment and there is no adequate remedy at law. Plaintiff seeks damages of $1.7 million in damages and attorneys' fees and costs, as well as injunctive relief (Count III).

Currently before the Court is Defendant's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, to transfer venue. See [11].

## II.     Motion to Dismiss for Improper Venue

The Complaint alleges that this Court is the proper venue for Plaintiff's action because "a substantial part of the acts and events giving rise to this lawsuit occurred in Cook County, Illinois." [2] at 8. For pleading purposes, this is all that is required, unless venue is challenged. See *Galesburg 67, LLC v. Northwest Television, Inc.*, 2016 WL 1555655, at *2 (N.D. Ill. Apr. 18, 2016); *Stickland v. Trion Grp., Inc.*, 463 F. Supp. 2d 921, 924 (E.D. Wis. 2006).

Defendant moves to dismiss on the basis of improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). "When considering a motion to dismiss, the district court ordinarily assumes the truth of all well-pleaded allegations in the plaintiff's complaint." *Deb v. SIRVA, Inc*., 832 F.3d 800, 808 (7th Cir. 2016). However, "this rule is less absolute when considering a motion to dismiss under Federal Rule 12(b)(3) than under Rule 12(b)(6)." *Id.* at 809. Under Rule 12(b)(3), the Court "court assumes the truth of the allegations in the plaintiff's

complaint, *unless* contradicted by the defendant's affidavits." *Id*. (emphasis in original) (citing B. Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1352 (2004)); see also *Williams v. Planet Fitness, Inc*., 2021 WL 1165101, at *3 (N.D. Ill. Mar. 26, 2021) ("This Court may look beyond the pleadings in evaluating a motion under Rule 12(b)(3)."). Once challenged, "[i]t is plaintiff's burden to establish that venue is proper, but plaintiff's evidentiary burden is low," as the Court resolves "all factual conflicts in its favor." *Script Transform, LLC v. Motorola Mobility, LLC*, 2021 WL 825666, at *1 (N.D. Ill. Mar. 1, 2021); see also *Allstate Life Insurance Co. v. Stanley W. Burns, Inc*., 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015).

As is relevant here, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Venue may be proper in more than one district. *Harlem Ambassadors Productions, Inc. v. ULTD Entertainment LLC*, 281 F. Supp. 3d 689, 697 (N.D. Ill. 2017). "If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially." *Allstate*, 80 F. Supp. 3d at 875-76 (citing 28 U.S.C. § 1406(a)).

This case is primarily one for breach of contract. "It is well established that the mere existence of a contract between a resident of the forum state and a nonresident is insufficient to subject the nonresident to the jurisdiction of the forum's courts." *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 923 (N.D. Ill. 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Instead, a breach of contract claim may be "litigated in the state where one of the contracting parties resides only if the dealings between the parties in regard to the disputed contract have a '*substantial connection*' with that state." *Id*. (emphasis in original) (quoting *Burger King*, 471 U.S. at 479). "To determine proper venue in a breach of contract action, courts take a number

of factors into consideration, including where the conduct underlying the breach occurred and where performance under the contract was to take place, and whether there was failure to make payment in a district pursuant to a contract." *Allstate*, 80 F. Supp. at 877 (internal quotation marks and citation omitted).

In addition, "[w]hen the underlying events consist of communications made by two parties located in separate districts, 'the requirements of § 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of actions was filed, given a sufficient relationship between the communication and the cause of action.'" *Allstate*, 80 F. Supp. 3d at 877 (citing *Imperial Crane Services, Inc. v. Cloverdale Equipment Co.*, 2013 WL 5904527, at *3 (N.D. Ill. Nov. 4, 2013)); see also *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (recognizing that "[t]elephone conversations and correspondence can support venue under section 1391(b)(2) depending on the nature of the contacts and their relationship to the claim"). Thus, "[e]ven when the defendant never personally enters the forum district, venue can nonetheless be appropriate in that district." *Id*. "It is also sufficient for the plaintiff to establish the 'substantial' nature of an event in the forum district if it is shown to be a 'part of the historical predicate for the instant suit.'" *Allstate*, 80 F. Supp. 3d at 877 (quoting *Jackson v. N'Genuity Enterprises, Co.*, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014)). "No single factor predominates, and the Court must weigh 'all of the facts and circumstances of the parties' business relationship...as a whole.'" *Guaranteed Rate*, 264 F. Supp. 3d at 923 (citing *Burger King*, 471 U.S. at 479).

In its motion to dismiss, Defendant argues that the Northern District of Illinois is not a proper venue because "it is clear that the events described in this Complaint took place in California," not Illinois. [11] at 4. Defendant points to three (and only three) facts: (1) "[t]he

Agreement was negotiated over the course of approximately a month with the vast majority of the negotiations taking place over the telephone and by way of email"; (2) "[m]ost importantly, the breach complained of—Zenvoy's alleged failure to perform—took place in California"; and (3) the parties "agreed that the contract would be governed by the laws of the State of California." *Id*. at 4 & n.2.

The fact that the negotiations occurred over the phone and email, with Plaintiff negotiating from Illinois and Defendant negotiating from California, supports a finding of venue in this District just as much as in the Central District of California. These "communications made by two parties located in separate districts" established the parties' understanding concerning the work Defendant was to perform under the Agreement and the manner in which the parties were to share profits and Plaintiff's proprietary information, *Allstate*, 80 F. Supp. 3d at 877, and form part of the "historical predicate" for this suit. *Jackson*, 2014 WL 4269448, at *8. In addition, the Agreement contemplates ongoing communications between the parties during the course of the contract, with Defendant agreeing to provide technical support, to "ideally" respond to inquiries within 24 hours, and "to work with each other to establish clear and detailed project plans and provide timely feedback when asked." [2] at 2. Plaintiff also notified Defendant of its breach from Illinois. These facts point toward venue being appropriate in this District. See, e.g., *Citadel Group Ltd. v. Washington Regional Medical Center*, 2008 WL 5423553, *3 (N.D. Ill. Dec. 29, 2008) (venue proper in a contract dispute between a developer in the forum state and a medical center in another state where medical center submitted communications to the developer in the forum, signed an authorization which permitted the developer to begin project development in the other state, and participated in conference calls and other communications with the third-parties hired by the developer allegedly pursuant to the authorization); *Moore v. AT&T Latin America Corp.*, 177 F.

Supp. 2d 785, 789 (N.D. Ill. 2001) (in action by former directors challenging merged company's refusal to exercise stock options given to them in settlement agreement with former company, venue was proper in Illinois where settlement and option agreements were negotiated in Illinois, sent to plaintiffs' counsel in Illinois, and signed by plaintiffs in Illinois, and plaintiffs tried to exercise options through their counsel in Illinois); cf. *Biomet Orthopedics, LLC v. Vaughan*, 2009 WL 500538, at *6–7 (N.D. Ind. Feb. 27, 2009) (in suit for breach of promissory note, explaining that defendant's venue analysis "focuses too narrowly on the last triggering even of the lawsuit," while "the sequence of events giving rise to this claim includes the parties' negotiations, execution, and performance of the note").

Turning to where Defendant's alleged breach occurred, Defendant offers a perfunctory declaration from Mr. Gestetner stating that "[a]ll of the work which Zenvoy was to perform under the Agreement referred to in Plaintiff's Complaint was to be performed in California, including any and all banking and accounting functions for Zenvoy." [1-2] at 3. He does not discuss what work was performed or whether there were any communications between California and this District during the course of performance. And although he claims that Defendant's banking and accounting functions were performed in California, he does not explain how Plaintiff and Defendant were able to share profits without payments being either directed to Plaintiff in Illinois or sent from Plaintiff in Illinois. Plaintiff's response on this point is perfunctory as well; Plaintiff does not provide a declaration or other evidence, and its brief focuses mainly on the requirements for establish personal jurisdiction, not venue. Plaintiff does, however, dispute that the breach occurred solely in California, asserting that "the breach arose out of … Defendant's mishandling, conversion, and unauthorize[d] use and profit from [Plaintiff's] Illinois-based proprietary information and data." [13] at 5. In its reply brief, Defendant claims that the location of Plaintiff's

data has no been properly established. However, Defendant offers no evidence to the contrary. And Plaintiff's position that its proprietary data and information is located in Illinois is consistent with the Complaint, which states that Plaintiff does business from Chicago and identifies no other location in which such data might be stored. See [2] at 7; cf. *Serac Inc. v. United Packaging Group, LLC*, 2018 WL 1469016, at *2 (N.D. Ill. Mar. 28, 2018) (venue proper in the Northern District of Illinois in contract action where plaintiff "performed virtually all of its obligations under the contract in this district").

Finally, in a footnote, Defendant points out that the Agreement contains a California choice of law clause. [11] at 4 n.2. However, Defendant does explain or cite any law explaining why this is relevant for purposes of the venue analysis. And notably, the Agreement does *not* contain a forum-selection clause, which in the typical case would be enforceable. See *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 (2013). Weighing all of the facts and circumstances of the parties' business relationship as a whole, see *Guaranteed Rate*, 264 F. Supp. 3d at 923, the Court concludes that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Illinois.

## III. Motion to Transfer

Defendant moves in the alternative to transfer this case to the Central District of California, which it claims is a more convenient forum. As the movant, Defendant "'has the burden of showing that the transferee forum is clearly more convenient.'" *Hirst v. SkyWest, Inc*., 405 F. Supp. 3d 771, 778 (N.D. Ill. 2019) (quoting *Heller Fin., Inc. v. Midwhey Powder Co. Inc*., 883 F.2d 1286, 1293 (7th Cir. 1989)). This showing must be made "by reference to particular circumstances," including the convenience of the parties and witnesses and the interests of justice. See *Kapoor v. National Rifle Association of America*, 343 F. Supp. 3d 745, 749 (N.D. Ill. 2018).

When considering convenience, the Court examines "'the availability of and access to witnesses, and each party's access to and distance from resources in each forum,' as well as 'the location of material events and the relative ease of access to sources of proof.'" *Id*. at 749-50 (quoting *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010)). Defendant, as the moving party, "must 'clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony' will include." *Hirst*, 405 F. Supp. 3d at 778 (quoting *Heller*, 883 F.2d at 1293). The Court's inquiry into the "interests of justice" examines "'docket congestion and likely speed to trial' in each forum, 'each court's relative familiarity with the relevant law,' 'the respective desirability of resolving controversies in each locale,' and 'the relationship of each community to the controversy.'" *Kapoor*, 343 F. Supp. 3d at 750.

The only relevant argument Defendant makes in its motion is that "[a]ll of the documents in Zenvoy's possession and witnesses that may testify on its behalf are located in California." [11] at 6. But as Plaintiff points out, *its* witnesses are all located in Illinois, and requiring them to travel to California would also be inconvenient. Further, Defendant does not specify any key witnesses or indicate what testimony they might provide. See *Hirst*, 405 F. Supp. 3d at 778. Nor does it suggest that it would present any difficulty to transmit copies of its documents to this District, which presumably could be done (quite easily) using remote electronic transmission. Finally, Defendant's motion does not discuss any of the "interests of justice" factors. Considering the parties' arguments as a whole, Defendant fails to demonstrate that the Central District of California is a "clearly more convenient" forum. *Hirst*, 405 F. Supp. 3d at 778.

**IV.     Conclusion**

For these reasons, the Court denies Defendant's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, to transfer venue [11].  The parties are directed to file a joint status report, including a proposed discovery plan, no later than July 1, 2021.


Dated: June 16, 2021

Robert M. Dow, Jr.
United States District Judge